**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Danielle Cop, | No. CV-24-00193-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Jennifer Cop seeks review of a final decision of the Commissioner of Social Security denying her application for disability supplemental security income. Cop argues the Administrative Law Judge improperly rejected the opinion of her treating specialist and her symptom testimony. (Doc. 12.) Because the ALJ's disability determination is not based on substantial evidence, the opinion is vacated and the case remanded for further administrative proceedings.

## I. Background

### A. Procedural History

Cop filed her application for disability supplemental security income on January 29, 2021. (Administrative Record ("AR") 15, Doc. 8-3 at 29.)[1] Cop is a 49 year-old woman with a high school education who previously worked as a cosmetologist. (AR 39–40.) In her application, Cop claimed several severe impairments, including diabetes mellitus, hypertension, migraine headaches, obesity, asthma, a foot disorder, and hereditary

---

[1] The complete AR spans Doc. 8-3 through Doc. 9-2.

hemorrhagic telangiectasia (HHT) with resulting anemia. (AR 31.) HHT is a disease "marked by thinness of the walls of the blood vessels of the nose, skin, and digestive tract, as well as a tendency to hemorrhage" that can result in headaches, migraines, iron deficiency, anemia, and nosebleeds. (Doc. 12 at 3 n.4 (internal quotations omitted).) After initial denials, Cop and a vocational expert testified before the ALJ on January 4, 2023. (AR 29.) The ALJ denied her claim on February 3, 2023.

### B. Five Step Evaluation Process

The ALJ follows a five-step process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds to step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments— precludes her from performing her past work. *Id.* If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

Cop met her burden at step one and two. But the ALJ found at step three that Cop's impairments or combination of impairments did not meet or medically equal a listed impairment. (AR 33.) After reviewing Cop's medical record, symptom testimony, and the third-party statement from her mother, the ALJ found at step four that Cop had an RFC to perform light work with some additional limitations, such as no exposure to extreme temperatures and concentrated odors. (AR 34.) The ALJ found that Cop's past work as a

cosmetologist was within her RFC. (AR 39.)

Based on Cop's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Cop could also perform the jobs of cashier, marker, and office helper. (AR 40.) The ALJ therefore found Cop not disabled. (AR 41.)

## II.    Standard of Review

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    Discussion

Cop argues the ALJ's decision should be reversed and remanded for calculation of benefits because the ALJ improperly rejected (1) the medical opinions of Cop's ear, nose and throat specialist, Dr. Raquel Redtfeldt; and (2) Cop's symptom testimony. (Doc. 12 at 11, 19.) Because the ALJ rejected Dr. Redtfeldt's opinion without adequately addressing supportability and consistency and rejected Cop's testimony without providing clear and convincing reasons, the case is remanded.

### A.  Medical Opinion Testimony

The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each doctor or

other source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). An ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Here, the ALJ rejected Dr. Redtfeldt's opinions as "not persuasive." (AR 38.) Dr. Redtfeldt provided opinions as of June 2021 and December 2022 that Cop experiences unpredictable nasal bleeding "at least daily," sometimes lasting up to two hours, and could miss time from work daily as a result. (AR 580, 1019.) Dr. Redtfeldt pointed to "many years of medical records" documenting Cop's nosebleeds. (AR 580, 1019.) The ALJ discounted those opinions as "brief, conclusory, and inadequately supported by clinical findings." (AR 38.) But the ALJ did not explain why he felt Dr. Redtfeldt's assessments were "brief" and "conclusory," and cited no underlying medical records contradicting them. (AR 38.) And in fact, Dr. Redtfeldt saw Cop for years and provided detailed notes discussing Cop's symptoms. (*See, e.g.,* AR 470, 896.) These medical records supported Dr. Redtfeldt's opinions: For instance, on October 12, 2020, Cop saw Dr. Redtfeldt after her nosebleeds returned and Dr. Redtfeldt noted Cop "has longstanding severe epistaxis [nosebleeds]" and "is disabled by the recurrent, life-threatening epistaxis and the anemia/chronic fatigue that it causes." (AR 470.) Later in March 2022, Dr. Redtfeldt noted Cop was again "having very severe nose bleeds and would like to return to [the operating room] for cautery." (AR 788.) As to the frequency of Cop's nosebleeds, notes of Dr. Redtfeldt and Cop's other providers suggest Cop's nosebleeds were frequent, sometimes occurring multiple times a week or within the same day. (*See* AR 470, 482, 854, 869, 985 (as of March 23, 2022, noting Cop "continues to have nosebleeds four times a day."), 1001 (as of September 30, 2022, noting Cop had "nose bleeds several times per week.").) In concluding Dr. Redtfeldt's records "do not seem to suggest the level of frequency [of nosebleeds] as suggested by the claimant" (AR 38), the ALJ impermissibly cherry-picked without considering the record as a whole. *See Attmore v. Colvin*, 827 F.3d 872, 877–78

(9th Cir. 2016) (noting an ALJ is "not permitted to 'cherry pick' from [] mixed results to support a denial of benefits" but rather the ALJ's examples must "constitute examples of a broader development.") (simplified).

The ALJ found Dr. Redtfeldt's assessments were "inadequately supported by clinical findings" because they "do not seem to suggest the level of frequency [of nosebleeds] as suggested by the claimant" and "the course of treatment pursued by the doctor" was not consistent with a "truly disabled" claimant. (AR 38–39.) But, as described, the ALJ did not point to anywhere in Dr. Redtfeldt's treatment records that did not match her proposed limitations. On appeal, the Commissioner cites places in Dr. Redtfeldt's treatment notes where Cop did not have nosebleeds or her nosebleeds were less frequent than Dr. Redtfeldt's opinions suggest. (Doc. 14 at 5.) But the ALJ—not the Commissioner post hoc—must explain why he believed Dr. Redtfeldt's opinion was unsupported by her treatment notes. *See Bogner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01908-PHX-DMF, 2023 WL 4734120, at *4 (D. Ariz. July 25, 2023) (rejecting ALJ's assessment that failed to explain how providers' opinions were unsupported by their treatment notes). The court cannot affirm based on facts and reasoning the ALJ did not provide or even seem to consider. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (a court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Additionally, the ALJ faulted Cop for not "follow[ing] through enough with" cauterizations and being "unable to comply with treatments," "referrals[,] and follow up visits." (AR 38–39.) But an ALJ cannot "find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons" she may fail to comply with treatment "or seek treatment consistent with the degree of [] her complaints." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017). Here, the ALJ failed to consider any of the purported reasons Cop failed to comply with treatments and referrals. For instance, the records reflect Cop was unable to consistently undergo cauterization because of restrictions

during the COVID-19 pandemic. (AR 868.) In addition, Dr. Redtfeldt acknowledged Cop's multiple other medical conditions "have often interfered with consistent, regular cautery treatments." (Doc. 12 at 16 (quoting AR 790).) And, according to Dr. Redtfeldt, Cop had attempted to pursue additional treatment at the Mayo Clinic and with the drug Avastin but her insurance denied coverage for both, "despite letters explaining her rare condition and the need for next-level expertise" at Mayo. (AR 896.) The ALJ's decision does not reflect that he considered any of these things, which was error.[2]

Finally, the ALJ characterized Cop's course of treatment as inconsistent with "what one would expect if the claimant were truly disabled" (AR 39), but does not specify what course of treatment he expected Cop to follow. *See Merceri v. Comm'r of Soc. Sec. Admin.*, No. CV 19-05328-PHX-CDB, 2021 WL 9098240, at *13 (D. Ariz. Mar. 22, 2021) (ALJ improperly found plaintiff did not pursue expected treatment for "totally disabled individual" but "failed to specify exactly what level of medical treatment one would expect" and "overlook[ed] the fact that [plaintiff] was treated" with multiple medications).) An ALJ "cannot usurp the role of doctors when interpreting medical evidence" by substituting his opinion "about [Plaintiff's] medical treatment being 'conservative'" for a medical provider's. *Id.* (quoting *Leusch v. Berryhill*, 358 F. Supp. 3d 896, 906 (D. Ariz. 2019); *see also Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ . . . reject[ed] the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor.").

The ALJ relied solely on the assessments of the state agency non-examining reviewer at reconsideration and the state agency physical examiner to support his conclusions that Cop could perform a range of work with some function-by-function limitations. (AR 38.) But this determination was not based on substantial evidence. The ALJ credited these opinions because they were "reasonable and supported by the record as

---

[2] The ALJ noted Cop had been "accepted" as a Mayo Clinic patient but failed to mention Cop did not pursue this treatment because her insurance declined to cover it. (AR 37; 896.) *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding lack of insurance coverage to be a "good reason" for plaintiff's failure to obtain more aggressive treatment).

a whole," one examiner "personally observed and examined" Cop, and the examiners were "highly trained" and "experts" in "evaluating disability claims." (AR 38.) But the ALJ does not provide any specific reasoning for why the state examiners' opinions were "supported by the record as a whole." *See, e.g., Burkart v. Comm'r of Soc. Sec. Admin*., No. CV-20-08326-PCT-JJT, 2022 WL 1485753, at *3 (D. Ariz. May 11, 2022) (rejecting ALJ's characterization of state agency reviewer's opinion as "supported by the course of medical treatment" because it did not cite to the medical record).

Accordingly, the ALJ's analysis of Dr. Redtfeldt's opinion was not based upon substantial evidence.

## B. Symptom Testimony

The ALJ found Cop's medically-determinable impairments "could reasonably be expected to cause the alleged symptoms," but concluded the "intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." (AR 35.) The ALJ's failure to offer specific, clear, and convincing reasons for rejecting Cop's symptom testimony is harmful error independently warranting remand. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

An ALJ evaluates the credibility of a claimant's symptom testimony using a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines whether the claimant has "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). The claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotations omitted). If the claimant satisfies this first step and the ALJ does not find "affirmative evidence of malingering," he can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt*, 53 F.4th at 494 (internal quotations omitted).

The ALJ found Cop's impairments could "reasonably be expected to cause the

alleged symptoms" but her statements concerning the "intensity, persistence and limiting effects of these symptoms" were "not entirely consistent" with the medical record. (AR 35.) The ALJ is required to identify "what testimony is not credible" but did not do so here. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Instead, the ALJ included parts of the medical record he believed conflicted with Cop's symptom testimony but did not explain why. *Cf.* SSR 16-3P, 2016 WL 1119029, at *8 (March 16, 2016) (ALJ must explain "which of an individual's symptoms [he] found consistent or inconsistent with the evidence in his or her record and how [his] evaluation of the individual's symptoms led to [his] conclusions."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

The ALJ noted instances of decreased nose bleeds in October and November 2021 and February 2022. (AR 36.) But this ignores other record evidence, for example a notation in the medical records that in March 2022 Cop's nosebleeds returned "four times a day." (AR 985.) Failing to explain this conflicting evidence violated the ALJ's duty to "take into account the record as a whole"; the court "cannot affirm based only on the selective evidence that supports the Commissioner." *Caldwell v. Saul*, 840 F. App'x 907, 910 (9th Cir. 2020) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The ALJ also concluded Cop's nosebleeds did not occur at the frequency she suggested because "cauterizations in the past have help[ed] but the claimant has not followed through enough with these treatments." (AR 36.) But as discussed above, a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment," such as lack of insurance coverage. *Carmickle*, 533 F.3d at 1162; *see also Orn*, 495 F.3d at 638 ("[F]ailure to receive medical treatment during the period that [a claimant] had no medical insurance cannot support an adverse credibility finding."). And Cop's treating providers had noted that cauterizations had temporarily ameliorated her symptoms but "did not last long" and sought further interventions (which Cop's insurance then

denied). (AR 896.)

Finally, the ALJ noted Cop "maintains her own home," "is able to visit friends and care for her children, and she drives." (AR 38.) But this assessment is factually incorrect and legally unsubstantiated. Cop lives with her parents and her children were adults at the time of the hearing. (AR 61.) The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [or] driving a car . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). And the ALJ failed to show "these physical activities [] consume[d] a substantial part of [plaintiff's] day" or how they were otherwise inconsistent with Cop's testimony. *Id.* Accordingly, the ALJ failed to offer "specific, clear, and convincing reasons" for rejecting Cop's symptom testimony. *Smartt*, 53 F.4th at 494.

## IV.    Appropriate Remedy

The court has discretion to remand a case for additional evidence or for an award of benefits if an ALJ's decision contains harmful error. *McCabe v. Comm'r of Soc. Sec. Admin.,* No. CV-2200192-PHX-DLR-CDB, 2023 WL 3080951, at *31 (D. Ariz. Apr. 4, 2023), *report and recommendation adopted*, 2023 WL 3078661 (D. Ariz. Apr. 25, 2023). Remanding for further agency proceedings is usually most appropriate. *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). In determining whether to remand for further proceedings or for an award of benefits, courts consider three criteria in a prescribed order, including (as the middle step) whether the record has been fully developed or if instead outstanding issues must be resolved before a disability determination can be made. *Treichler*, 775 F.3d at 1100–101, 1107; *Garrison*, 759 F.3d at 1020. Under this step, a remand for further proceedings is appropriate where the record contains "significant factual conflicts." *Treichler*, 775 F.3d at 1104.

Reviewing the record as a whole, outstanding factual issues must be resolved before

1    a disability determination can be made. The ALJ noted conflicts between the medical

2    opinions and medical evidence that remain to be resolved even once Dr. Redtfeldt's most

3    recent opinion is considered. (AR 37–38.) And Cop's testimony could be read to conflict

4    with medical evidence, for example, in stating she had nosebleeds sometimes "once a day

5    and sometimes twice a day" (AR 57) throughout the disability period, whereas records

6    showed the bleeding sometimes abated after cauterization. (AR 896.)

7         Accordingly,

8         **IT IS ORDERED** vacating and remanding the decision of the ALJ.

9         **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

10   consistent with this Order and close this case.

11        Dated this 4th day of February, 2025.

12

13

14

15                                            **Honorable Krissa M. Lanham**
                                              **United States District Judge**
16

17

18

19

20

21

22

23

24

25

26

27

28